NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0721
     Facsimile:  (213) 894-0141
     E-mail:     John.Lulejian@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| REQUEST FROM THE ITALIAN REPUBLIC FOR ASSISTANCE IN A CRIMINAL MATTER | No. 18CM 00739 *EX PARTE* APPLICATION FOR ORDER APPOINTING COMMISSIONER; EXHIBIT |
| --- | --- |

Applicant United States of America hereby applies to this Court ex parte for an order, pursuant to the Treaty Between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters, U.S.-Italy, Nov. 9, 1982, S. Treaty Doc. No. 98-25 (1984), and the Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty Between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters signed 9 November 1982, U.S.-Italy, May 3, 2006, S. Treaty Doc. No. 109-13 (2006), as well as 18 U.S.C. § 3512, and its own inherent power, appointing Assistant United States Attorney John J. Lulejian as a

Commissioner of the Court for the purpose of obtaining evidence sought by the Italian Republic ("Italy").  This application is made pursuant to a Request for Legal Assistance in a Criminal Matter from Italy and is based on the aforementioned treaty and the attached Memorandum of Points and Authorities and Exhibit.

DATED:  April 30, 2018

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


/s/ John J. Lulejian
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Applicant
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**PAGES**

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I.   BACKGROUND ........................................................ 1

    A.   SUMMARY ...................................................... 1

    B.   FACTS ........................................................ 2

    C.   ASSISTANCE REQUESTED ......................................... 2

II.  DISCUSSION ........................................................ 3

    A.   THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED
        STATES TO FULFILL ITS TREATY OBLIGATIONS ................. 3

        1.   The Treaty .............................................. 3

        2.   Statutory Authority .................................... 5

    B.   EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE
        TREATY AND SECTION 3512 ................................... 6

        1.   Authorization of the Application to this Court ...... 6

        2.   Foreign Authority Seeking Assistance Within
            Section 3512 and the Treaty ........................ 7

        3.   Authority of the Federal Courts Under Section
            3512 ................................................ 8

    C.   APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT
        EVIDENCE ................................................... 9

        1.   Statutory Authorization ............................... 9

        2.   Procedures for Evidence Collection ................... 9

            a.   Procedures Authorized by Other Statutes ....... 10

            b.   Orders by the Person Appointed; Commissioner
                Subpoenas ...................................... 10

            c.   Notice of Evidence Taking ..................... 11

            d.   Right to Financial Privacy Act ............... 12

III. CONCLUSION ....................................................... 12

i

## TABLE OF AUTHORITIES

**PAGES**

**FEDERAL CASES**

Asakura v. City of Seattle,
        265 U.S. 332 (1924), amended, 44 S. Ct. 634 (1924) ........... 3

Barr v. U.S. Department of Justice,
        645 F. Supp. 235   (E.D.N.Y. 1986) ............................ 4

In re Commissioner's Subpoenas,
        325 F.3d 1287 (11th Cir. 2003) ............................. 3, 9

In re Erato,
        2 F.3d 11 (2nd Cir. 1993) ................................. 2, 10

In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,
        634 F.3d 557 (9 th Cir. 2011) ................................. 3

In re Letter of Request for Judicial Assistance from the
        Tribunal Civil de Port-Au-Prince, Republic of Haiti,
        669 F. Supp. 403 (S.D. Fla. 1987) ........................... 12

In re Letter of Request from the Crown Prosecution Service of
        the United Kingdom,
        870 F.2d 686 (D.C. Cir. 1989) ........................... 10, 11

In re Letter of Request from the Supreme Court of Hong Kong,
        138 F.R.D. 27 (S.D.N.Y. 1991) ................................ 9

In re Letters of Request from the Supreme Court of Hong Kong,
        821 F. Supp. 204 (S.D.N.Y. 1993) ......................... 9, 12

In re Letters Rogatory from the Tokyo District, Tokyo, Japan,
        539 F.2d 1216 (9th Cir. 1976) ............................... 11

United States v. Daccarett,
        6 F.3d 37 (2d Cir. 1993) .................................... 12

United States v. Schooner Peggy,
        5 U.S. (1 Cranch) 103, 2 L. Ed. 49 (1801) .................... 3

White v. National Football League,
        41 F.3d 402 (8th Cir. 1994) ................................. 10

Young v. U.S. Dept. of Justice,
        882 F.2d 633 (2d Cir. 1989) ................................. 12

Zschernig v. Miller,
        389 U.S. 429 (1968) .......................................... 3

**FEDERAL STATUTES**

12 U.S.C. § 3401 .............................................. 12

18 U.S.C. § 2703 ............................................... 8

18 U.S.C. § 3123 ............................................... 8

18 U.S.C. § 3512 ........................................... passim

18 U.S.C. § 3512(a)(1), (2) ..................................... 9

28 U.S.C. § 1782 ........................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   BACKGROUND**

   **A.   SUMMARY**

Pursuant to the Treaty Between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters, U.S.-Italy, Nov. 9, 1982, S. Treaty Doc. No. 98-25 (1984), and the Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty Between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters signed 9 November 1982, U.S.-Italy, May 3, 2006, S. Treaty Doc. No. 109-13 (2006), (collectively the "Treaty"; copy of the Treaty and related documents attached hereto as Exhibit 1), the Government of the Italian Republic ("Italy") has asked the United States for assistance in connection with a criminal investigation underway in Italy.  The Treaty provides that when necessary, the United States "may require that evidence and information provided, and information derived therefrom, be kept confidential in accordance with state conditions."  See Exh. 1, Treaty Art. 8(1).  Further, the United States "may request that the application for assistance and the granting of such assistance be kept confidential."  See Exh. 1, Treaty Art. 8(2).  In this case, however, confidentiality is not necessary as Italy has not asked the United States for confidentiality.

Applicant United States of America respectfully requests that Assistant United States Attorney John J. Lulejian be appointed a Commissioner of the Court to carry out portions of the request applicable to this judicial district.

**B.   FACTS**

The facts of the request may be summarized as follows:

The Rome Prosecutor's Office is prosecuting ELPHIAS TARS BIASCIUCCI for sexual assault against L.P.M. ("the victim"), on the night of October 30, 2008, in Rome.   The victim filed a police complaint on November 5, 2008.

According to Italian authorities, BIASCIUCCI and Francesco Bordi accompanied the victim and her friend, C.A.C., home from "Escopazza," a disco in Rome, Italy.   Both the victim and C.A.C. were inebriated. When they reached the victim's home, while C.A.C. was passed out on a bed, BIASCIUCCI sexually abused the victim as she slipped in and out of consciousness.   When the victim was conscious, she repeatedly expressed her lack of consent to the sexual contact with BIASCUCCI. In 2012, Bordi was tried separately and acquitted for the crime for which BIASCUCCI is being prosecuted.

Italian authorities believe that Bordi currently resides in Sherman Oaks, California.

**C.   ASSISTANCE REQUESTED**

With respect to the Central District of California, the request seeks assistance to secure by video teleconference, the testimony of Francesco Bordi in an evidentiary hearing.   Also, the requests asks United States authorities to serve certain documents related to the case on Bordi.

Applicant United States of America asks that Assistant United States Attorney John J. Lulejian be empowered to issue compulsory process to render that assistance as a Commissioner of this Court.

## II.   DISCUSSION

### A.   THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED STATES TO FULFILL ITS TREATY OBLIGATIONS

#### 1.   The Treaty

The United States is seeking an order appointing a Commissioner to execute the request from Italy.  A treaty constitutes the law of the land.  U.S. Const. Art. VI.  The provisions of a treaty stand on equal footing with acts of Congress and are binding on the courts. Asakura v. City of Seattle, 265 U.S. 332, 341 (1924), amended, 44 S. Ct. 634 (1924); United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103.  To the extent that self-executing provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-441 (1968); In re Premises Located at 840 140th Ave. NE, Bellevue, Wash., 634 F.3d 557, 568 (9th Cir. 2011); In re Erato, 2 F.3d 11, 15 (2nd Cir. 1993).

The Treaty obligates the United States and Italy "to afford each other, in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings."  See Exh. 1, Treaty, Art. 1(1).  The United States and Italy entered into the Treaty for the purpose of improving the effectiveness of the law enforcement authorities of both states in the investigation and prosecution of crime.  See Exh. 1, Letter of Transmittal of Treaty from the White House to the Senate of the United States, June 11, 1984.  The Treaty obligates each party to provide assistance to the other in investigations and prosecutions of offenses, and in proceedings related to criminal matters.  See Exh. 1, Art. 1(1 bis)(a).  See also In re Commissioner's Subpoenas, 325 F.3d

1287, 1290 (11th Cir. 2003).  Each party contemplated that it would
provide the other with assistance generally comparable to that which
is available to its own law enforcement authorities, which assistance
includes taking testimony or statements of persons, providing
documents and other evidence, and immobilizing assets.  See Exh. 1,
Treaty, Art. 1(2).  See also Barr v. U. S. Dep't of Justice, 645 F.
Supp. 235, 237 (E.D.N.Y. 1986), aff'd, 819 F.2d 25 (2d Cir. 1987).

The Treaty and 18 U.S.C. § 3512 empower federal courts to
execute treaty requests in order to comply with the United States'
treaty obligations, including through the use of compulsory measures.
Article 4 provides as follows:

> The competent officials of the Requested State shall do
> everything in their power to execute a request.  The courts
> of the Requested State shall issue subpoenas, search
> warrants or any other process necessary in the execution of
> the request.

Exh. 1, Treaty, Art. 4(1).  The Treaty further provides as follows:

> The Requested State shall permit the presence of an
> accused, counsel for he accused, and persons charged with
> the enforcement of the criminal laws to which the request
> relates.

Exh. 1, Treaty, Art. 14(3).

The Treaty imposes no dual criminality requirement as a
precondition for providing assistance.  See generally Exh. 1, Treaty,
art. 1.  Consequently, each state is obligated to provide assistance
without regard to whether the conduct under investigation or
prosecution would constitute an offence under the laws of the

4

1  Requested State.  See Exh. 1, Letter of Submittal of Treaty to the
2  President from the Department of State, June 1, 1984.
3      The Treaty contains a non-exhaustive list of assistance that
4  must be rendered upon proper request, which includes "locating
5  persons," "producing documents and records," and "taking testimony."
6  Exh. 1, Treaty, Art. 1(2).  It also includes "[o]ther types of
7  assistance . . . to the extent such assistance is not inconsistent
8  with the laws of the Requested State."  Id.  The Treaty makes clear
9  that the requirement that assistance be rendered is mandatory and
10 that the parties "shall provide mutual assistance."  Id., Art. 1.
11           2.   **Statutory Authority**
12      The Treaty is designed to be self-executing and requires no
13 implementing legislation.  See Exh. 1, Letter of Submittal of Treaty
14 to the President from the Department of State, June 1, 1984.  See
15 also In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,
16 634 F.3d at 568.  However, because the procedural provisions in many
17 treaties are minimal, in the past, federal courts routinely utilized
18 procedures authorized by 28 U.S.C. § 1782 (the "commissioner"
19 process) to execute treaty requests from foreign authorities.  Id.
20 Substantive federal law regarding searches, seizures, and other
21 compulsory processes further grounded the execution of such
22 assistance requests.
23      On October 19, 2009, the President signed the Foreign Evidence
24 Request Efficiency Act of 2009, Pub. Law No. 111-79, 123 Stat. 2086,
25 which enacted 18 U.S.C. § 3512.  Section 3512 explicitly authorizes a
26 federal court to-
27           issue such orders as may be necessary to execute a request
28           from a foreign authority for assistance in the

5

investigation or prosecution of criminal offenses, or in
proceedings related to the prosecution of criminal
offenses, including proceedings regarding forfeiture,
sentencing, and restitution.

Section 3512 directly empowers federal courts to execute such requests and separately codifies under Title 18 the longstanding practice and procedures employed by the United States and the federal courts to execute requests by foreign authorities for assistance to the fullest extent possible under United States law.  Congress enacted Section 3512 to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. S6807-01 (2009) (Statement of Sen. Whitehouse).

    **B.    EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE TREATY AND SECTION 3512**

        **1.    Authorization of the Application to this Court**

Section 3512 provides,

Upon application, duly authorized by an appropriate
official of the Department of Justice, of an Attorney for
the Government, a Federal judge may issue such orders as
may be necessary to execute a request from a foreign
authority for assistance in the investigation and
prosecution of criminal offenses, or in proceedings related
to the prosecution of criminal offenses, including
proceedings regarding forfeiture, sentencing and
restitution.

For purposes of Section 3512, an application is "duly authorized by

1  an appropriate official of the Department of Justice" when the Office

2  of International Affairs of the Department of Justice's Criminal

3  Division has reviewed and authorized the request and is executing the

4  request itself or has delegated the execution to another attorney for

5  the government.  Because of the facts and circumstances set forth in

6  the request, Section 3512(c) authorizes filing the instant

7  application in the Central District of California.[1]  Accordingly, the

8  request has been referred to this district for execution.

9         2.    **Foreign Authority Seeking Assistance Within Section**

10               **3512 and the Treaty**

11       As to the "foreign authority" making the request, Section

12  3512(h) provides,

13       The term "foreign authority" means a foreign judicial

14       authority, a foreign authority responsible for the

15

_____

16  [1] 18 U.S.C. § 3512 provides, in relevant part:

17

18  (c) Filing of requests.-- Except as provided under
    subsection (d), an application for execution of a request
    from a foreign authority under this section may be filed--

19

20       (1) in the district in which a person who may be required
         to appear resides or is located or in which the documents
         or things to be produced are located;

21       (2) in cases in which the request seeks the appearance of
         persons or production of documents or things that may be

22       located in multiple districts, in any one of the districts
         in which such a person, documents, or things may be

23       located; or
         (3) in any case, the district in which a related Federal

24       criminal investigation or prosecution is being conducted,
         or in the District of Columbia.

25  (d) Search warrant limitation. -- An application for
    execution of a request for a search warrant from a foreign

26  authority under this section, other than an application for
    a warrant issued as provided under section 2703 of this

27  title, shall be filed in the district in which the place or
    person to be searched is located.

28

investigation or prosecution of criminal offenses or for
proceedings related to the prosecution of criminal
offenses, or an authority designated as a competent
authority or central authority for the purpose of making
requests for assistance pursuant to an agreement or treaty
with the United States regarding assistance in criminal
matters.

In this matter the Minister of Justice is the designated Central
Authority in Italy for requests made pursuant to the Treaty.   Exh. 1,
Treaty, Art. 2(2).

As evidenced by the request itself and confirmed in the
authorization process and again by the undersigned, consistent with
Section 3512(a)(1), the foreign authority seeks assistance in the
investigation or prosecution of criminal offenses or in proceedings
related to the prosecution of criminal offenses.

### 3.   Authority of the Federal Courts Under Section 3512

When enacting Section 3512, Congress intended that federal
courts facilitate to the fullest extent possible the execution of
requests by foreign authorities for assistance in criminal matters
and endeavored to streamline and expedite the execution of such
requests.   Section 3512 authorizes federal courts to issue "such
orders as may be necessary to execute a request" and specifically
includes:  orders for search warrants pursuant to Federal Rule of
Criminal Procedure 41; orders for stored wire or electronic
communications and related evidence under 18 U.S.C. § 2703; orders
for pen registers and trap and trace devices under 18 U.S.C. § 3123;
orders for the provision of testimony or other statements, or the
production of documents or other things, or both; and orders

appointing "a person" to direct the taking of testimony/statements or the production of documents or other things, or both.  See 18 U.S.C. § 3512(a)(1), (2).

The assistance requested by Italy pursuant to the Treaty by its Minister of Justice on behalf of the Public Prosecutor at the Court of Genoa in the instant Request falls squarely within that contemplated by both the Treaty and Section 3512.

## C.   APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT EVIDENCE

### 1.   Statutory Authorization

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both."  The statute further authorizes the person appointed to issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things.  In keeping with past practice under 28 U.S.C. § 1782, a federal court may appoint an attorney for the government, typically a federal prosecutor, as "commissioner."

### 2.   Procedures for Evidence Collection

Section 3512(a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the request.  This authorization encompasses orders specifying the procedures to be used to collect particular evidence, including procedures requested by the foreign authority to facilitate its later use of the evidence.  In executing a request made pursuant to a treaty, a court has the obligation to prescribe effective and expeditious procedures designed to promote the purpose of the treaty.  See In re Commissioner's

1    Subpoenas, 325 F.3d at 1305.  Nothing in Section 3512 suggests any
2    limitation on a court's power to exercise "complete discretion in
3    prescribing the procedure to be followed," as was available under 28
4    U.S.C. § 1782.   In re Letter of Request from the Crown Prosecution
5    Serv. of the U.K., 870 F.2d 686, 693 (D.C. Cir. 1989), (quoting S.
6    Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789.
7    See White v. National Football League, 41 F.3d 402, 409 (8th Cir.
8    1994) (a court may issue whatever process it deems necessary to
9    facilitate disposition of a matter before it); Fed. R. Crim. P. 57(b)
10   ("A judge may regulate practice in any manner consistent with federal
11   law, these rules, and the local rules of the district.").

### a.   Procedures Authorized by Other Statutes

13        In addition, Section 3512 references specific federal laws for
14   obtaining certain evidence and, by doing so, adopts any statutorily
15   mandated procedures in relation to obtaining orders for search
16   warrants; orders for contents of stored wire or electronic
17   communications or for records related thereto; and orders for a pen
18   register or a trap and trace device.

### b.   Orders by the Person Appointed; Commissioner Subpoenas

21        Section 3512 authorizes the "person" appointed (here, and in
22   past practice under 28 U.S.C. § 1782, the "commissioner") to issue
23   orders "requiring the appearance of a person, or the production of
24   documents or other things or both."  Further, Article 4(1) of the
25   Treaty provides for the issuance of procedural documents, such as
26   subpoenas, to gather evidence.

27        The commissioner may issue a "commissioner's subpoena," to
28   obtain the requested evidence.  See In re Commissioner's Subpoenas,

325 F.3d at 1291 (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); In re Erato, 2 F.3d at 13-14 (same).  Section 3512 expressly authorizes the service and enforcement of such orders, or commissioner's subpoenas, anywhere in the United States (i.e., coextensive with the service of subpoenas in U.S. criminal investigations and prosecutions).

            **c.   Notice of Evidence Taking**

      As an initial matter, this application is being made ex parte, consistent with the practice of the United States in its domestic criminal matters and its prior practice on behalf of foreign authorities under 28 U.S.C. § 1782.  In re Letter of Request from the Crown Prosecution Serv. of the U.K., 870 F.2d at 688; In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).  The Treaty itself contemplates the need for confidentiality with respect to all aspects of the execution of requests.  See Exh. 1, Treaty, Art. 8.  However, as set forth above, confidentiality is not necessary, as Italy has not requested it.

      Both Section 3512 and the Treaty at Article 4 authorize use of compulsory process in the execution of treaty requests comparable or similar to that used in domestic criminal investigations or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any party other than the recipients (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of treaty requests pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  In the absence of a specific request to provide notice, a district court and United States authorities can

1  assume that a requesting foreign authority has provided such notice
2  as the foreign law requires, or that foreign law does not require
3  notice and the requesting foreign authority does not consider notice
4  to be necessary or useful.  Accordingly, a federal district court
5  should authorize a commissioner to collect the evidence requested
6  without notice to any party other than the recipient of the
7  commissioner's subpoena except to the extent that a request asks for
8  specific notice procedures.

9  d.    **Right to Financial Privacy Act**

10  The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq.,
11  does not apply to execution of foreign legal assistance requests.
12  Young v. U.S. Dep't. of Justice, 882 F.2d 633, 639 (2d Cir. 1989); In
13  re Letter of Request for Judicial Assistance from the Tribunal Civil
14  de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D.
15  Fla. 1987); In re Letters of Request from the Supreme Court of Hong
16  Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993).  Consequently, to the
17  extent that execution of a request entails production of bank or
18  financial records, notice provisions of the Act do not apply, and the
19  commissioner need not give, nor arrange for the custodian of records
20  to give, notice to an account holder.[2]

21  **III. CONCLUSION**

22  For the reasons stated above, the United States respectfully
23  requests that this Court issue an order in the form lodged separately
24  herewith appointing Assistant United States Attorney John J. Lulejian
25  as a Commissioner to execute portions of the request, and authorizing

26
27  _____
    [2] The Act itself applies only to accounts maintained in a
    person's name and not to corporate, perhaps even partnership,
28  accounts.  United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir.
    1993).

said Commissioner to take such actions as are necessary to comply with the request, including the issuance of compulsory process in the form of Commissioner's orders or subpoenas, the administration of oaths to witnesses, and the taking of sworn testimony.

# Exhibit 1

24 ILM 1539

| 98TH CONGRESS<br>*2d Session* | SENATE | TREATY DOC.<br>98–25 |
|---|---|---|

# TREATY WITH THE ITALIAN REPUBLIC ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

## M E S S A G E

### FROM

# THE PRESIDENT OF THE UNITED STATES

#### TRANSMITTING

THE TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE ITALIAN REPUBLIC ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, TOGETHER WITH A RELATED MEMORANDUM OF UNDERSTANDING SIGNED AT ROME ON NOVEMBER 9, 1982



JUNE 11, 1984.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

31–118 O

WASHINGTON : 1984

ENTERED INTO FORCE   11/13/85



## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *June 11, 1984.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters, together with a related Memorandum of Understanding, signed at Rome on November 9, 1982.

I transmit also, for the information of the Senate, the report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual assistance treaties being negotiated by the United States. This Treaty contains two major innovations: compulsory testimony in the requesting State in appropriate cases and the immobilization and forfeiture of assets. The former is of great importance in insuring complete trials in an age of rapidly increasing levels of international criminal activity. The latter is of great importance in depriving international criminals of the fruits of their crimes. The Treaty primarily utilizes existing statutory authority, but will require implementing legislation for the provision concerning forfeiture of assets.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: (1) executing requests relating to criminal matters; (2) taking of testimony or statements of persons; (3) effecting the production and preservation of documents, records, or articles of evidence; (4) serving judicial documents; (5) requiring the appearance of a witness before a court of the requesting Party; (6) locating persons; and (7) providing judicial records, evidence, and information.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

RONALD REAGAN.

(III)

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, June 1, 1984.*

THE PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters, together with a related Memorandum of Understanding, signed at Rome on November 9, 1982. I recommend that the Treaty and the Memorandum of Understanding be transmitted to the Senate for its advice and consent to ratification.

The Treaty contains two major innovations: compulsory testimony in the requesting State (Article 15) and immobilization and forfeiture of assets (Article 18). The Treaty relies primarily on the existing authority of the federal courts, particularly 28 U.S.C. § 1782. Where existing authority is absent or insufficient, this Treaty establishes the necessary authority. The provision concerning forfeiture of assets will require implementing legislation which I understand the Department of Justice intends to propose.

Article 1 provides for mutual assistance between law enforcement agencies of the Contracting States relating to criminal proceedings or investigations. Article 1 also sets forth a non-exclusive list of the types of assistance available under the Treaty including, for example, taking testimony, serving documents, and executing requests for searches and seizures or depositions in accordance with the laws of the requested State. Article 1 further states that assistance shall be rendered whether or not the acts under investigation are offenses in the requested State or the requested State would have jurisdiction in similar cirumstances.

Article 2 requires that all requests for assistance be made and executed through the "Central Authority" of each Contracting State. For the United States, the Central Authority is the Attorney General. For the Republic of Italy, the Central Authority is the Minister of Grace and Justice.

Article 3 sets out the necessary and suggested information to be included in a request for assistance. These requirements are similar to those found in other recent mutual legal assistance treaties (such as those with The Netherlands and Turkey).

Article 4 provides for the execution of requests for assistance. Requests shall be executed in accordance with provisions of the Treaty and the laws of the requested State. The agency or authority selected by the Central Authority to execute the request is authorized and required to take whatever action is necessary and

VI

within its power to execute such requests. The courts of the requested State shall issue the necessary process in the execution of a request. Desired procedures specified in the request for assistance are to be followed unless specifically prohibited by the laws of the requested State.

Article 5 specifies instances in which assistance may be denied or postponed under the Treaty. Mutual assistance may be refused if (1) assistance would prejudice the security or other essential public interests of the requested state, (2) the request relates to a military or political offense, or (3) the request does not comply with the requirements of the Treaty. Assistance may be postponed in instances where it would interfere with an ongoing investigation or proceeding in the requested State.

Article 6 provides for the return to the requesting State of the completed request. To the extent possible, documents and records provided shall be complete and in unedited form.

Article 7 provides for the payment of the costs of assistance. The requested State shall render assistance without cost, except for a) translation of documents, b) private expert fees, c) witness travel fees to the requesting State, and d) expenses related to the transfer of witnesses in custody.

Article 8 provides for the confidentiality of evidence. The requested State may require that evidence and other information be kept confidential, except when disclosure is necessary in a public proceeding. Article 8 also provides that evidence sought under the Treaty will not be used for any purposes other than those stated in the request without the consent of the requested State.

Article 9 states that the requesting State shall return, upon request, documents, records or evidence furnished in execution of a request as soon as possible.

Article 10 states that the requested State shall make thorough efforts to locate within its territory persons specified in a request for assistance.

Article 11 provides for the service in the requested State of legal documents transmitted for this purpose by the requesting State.

Article 12 provides that the requested State shall furnish copies of publicly available documents or records of a government agency. Article 12 further provides that any nonpublic government document or record may be provided to the same extent and under the same conditions as it would be made available to the law enforcement or judicial authorities of the requested State. Finally, Article 12 provides that these documents or records, if certified authentic by the Central Authority of the requested State, shall not require further certification or authentication to be admissible into evidence.

Article 13 provides for compulsory production of documents and articles to the same extent as would be required for criminal actions in the requested State. Article 13 further provides for search and seizure if the request contains information which would justify such action in criminal investigations or proceedings under the laws of the requested State.

Article 14 provides for the taking of testimony in the requested State. It states that a person shall be compelled to appear and testify to the same extent as would be required in a criminal investi-

VII

gation or proceeding in the requested State. Article 14 further states that the requested State shall permit the presence of the accused, counsel for the accused and persons charged with the enforcement of the criminal laws to which the request relates.

Article 14 also provides for questioning of the witness by those present, in accordance with the laws of the requested State, thereby permitting cross-examination of the witness. Testimonial privileges under the laws of the requesting State are not applicable in the execution of such a request, but are preserved for decision by the courts of the requesting State.

Article 15 provides for the taking of testimony in the requesting State. It states that the requested State shall compel a person to appear and testify in the requesting State provided that a) there is no reasonable basis to deny the request, b) a person could be compelled to appear and testify in similar circumstances in the requested State, and c) the requesting State certifies the testimony is material and relevant. Article 15 further provides that a person who fails to appear as directed shall be subject to sanctions under the laws of the requested State, such sanctions not to include removal of the person to the requesting State.

Article 16 provides for the transfer of persons in custody for testimonial purposes in cases where the requesting State needs such a person as a witness and in cases where a defendant seeks to be present for purposes of confrontation at a judicial proceeding in the other State. A person in custody needed as a witness in the requested State shall be transported to that State subject to the conditions set forth in Article 15. A person in custody who seeks for purposes of confrontation to be present in another State shall be transported to that State unless the State of custody has a reasonable basis for denying the request.

Article 17 provides for the safe conduct of a person appearing as a witness before an authority in the requesting State. It states that such a person a) shall not be subject to suit, detention or any other restriction of personal liberty with respect to any act or conviction which preceded departure from the requested States, and b) shall not be prosecuted based on truthful testimony provided pursuant to the request. Safe conduct ceases, however, if ten days after notification that his presence is not longer required and he is free to leave, the person has not left the requesting State, or having left, has returned.

Article 18 provides for the immobilization and forfeiture of assets. It states that, in emergency situations, the requested State shall have authority to immobilize assets found in that State and, after appropriate judicial proceedings, to order the forfeiture of those assets to the requesting State. Such forfeiture authority will be of great importance in depriving international drug traffickers and members of organized crime of the fruits of their crime. As noted above, this provision requires implementing legislation which the Department of Justice intends to propose.

Article 19 provides that assistance and procedures provided by this Treaty shall not preclude assistance available under any other applicable international agreements or under the domestic law of the Contracting States.

VIII

Article 20 provides that the Treaty shall enter into force upon the exchange of instruments of ratification.

Article 21 states that either State may terminate the Treaty upon six months written notice to the other.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at an early date.

Respectfully submitted.

## TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE ITALIAN REPUBLIC ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

The Government of the United States of America and the Government of Italian Republic, desiring to conclude a Treaty on mutual assistance in criminal matters, have agreed as follows:

### ARTICLE 1

#### *Obligation to Render Assistance*

1. The Contracting Parties undertake to afford each other, upon request and in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings.

2. Such assistance shall include:
   a. locating persons;
   b. serving documents;
   c. producing documents and records;
   d. executing requests for search and seizure;
   e. taking testimony;
   f. transferring persons for testimonial purposes; and
   g. immobilizing and forfeiting assets.

Other types of assistance shall also be granted to the extent such assistance is not inconsistent with the laws of the Requested State.

3. Assistance shall be rendered even when the acts under investigation are not offenses in the Requested State and without regard to whether the Requested State would have jurisdiction in similar circumstances.

4. This Treaty is intended solely for mutual assistance in criminal matters between authorities of the Contracting Parties.

### ARTICLE 2

#### *Central Authority*

1. A request under this Treaty shall be made by a Central Authority for each Contracting Party. The Central Authorities shall communicate directly with each other to implement the provisions of this Treaty.

2. For the United States the Central Authority shall be the Attorney General. For the Republic of Italy the Central Authority shall be the Minister of Grace and Justice.

### ARTICLE 3

#### *Contents of a Request*

1. A request for assistance shall indicate:

   a. the name of the authority conducting the criminal investigation or proceeding to which the request relates;

   b. the subject matter and nature of the investigation or proceeding;

   c. a description of the evidence or information sought or the acts to be performed; and

   d. the purpose for which the evidence, information or action is sought.

2. To the extent necessary and possible, a request shall include:

   a. available information on the identity and whereabouts of a person to be located;

   b. the identity and location of a person to be served, that person's relationship to the proceeding, and the manner in which service is to be made;

   c. the identity and location of a person from whom evidence is sought;

   d. a precise description of the place to be searched and the objects to be seized;

   e. a description of the manner in which any testimony is to be taken and recorded;

   f. a list of questions to be answered; and

   g. a description of any particular procedure to be followed in executing the request.

3. A request shall indicate the allowances and expenses to which a person appearing in the Requesting State will be entitled.

4. A request and accompanying documents shall be in both English and Italian.

ARTICLE 4

*Execution of a Request*

1. The Central Authority of the Requested State shall promptly comply with a request or, when appropriate, transmit it to the authority having jurisdiction to do so. The competent officials of the Requested State shall do everything in their power to execute a request. The courts of the Requested State shall issue subpoenas, search warrants, or any other process necessary in the execution of a request.

2. A request shall be executed in conformity with the provisions of this Treaty and according to the laws of the Requested State. Procedures specified in the request shall be followed unless prohibited by the laws of the Requested State.

ARTICLE 5

*Limitations on Compliance*

1. The Requested State may deny assistance to the extent that:

   a. execution of a request would prejudice the security or other essential public interests of the Requested State;

   b. a request relates to a purely military offense or a matter considered a political offense by the Requested State; or

   c. a request does not comply with the provisions of this Treaty.

3

2. Before refusing to execute a request, the Requested State shall determine whether assistance can be given subject to such conditions as it deems necessary.

3. The Requested State may postpone execution of a request or grant it subject to conditions if execution would interfere with an ongoing investigation or proceeding in the Requested State.

4. The Requested State shall immediately inform the Requesting State of the reason for partial or total denial or postponement of assistance.

## ARTICLE 6

### *Return of a Completed Request*

1. Upon completion of a request the Requested State shall, unless otherwise agreed, return to the Requesting State the original request together with all information and evidence obtained, indicating place and time of execution.

2. To the extent possible, all documents and records to be furnished pursuant to a request shall be complete and in unedited form. Upon application of the Requesting State, the Requested State shall make every effort to furnish original documents and records.

## ARTICLE 7

### *Costs and Translations*

The Requested State shall render assistance without cost to the Requesting State except for:

    a. expenses incurred in the translation of documents accompanying a request or which result from a request;

    b. fees of private experts specified in a request;

    c. all expenses related to travel of witnesses pursuant to Article 15; and

    d. all expenses related to the transfer of witnesses in custody pursuant to Article 16.

## ARTICLE 8

### *Protecting Confidentiality and Restricting Use of Evidence and Information*

1. When necessary, the Requested State may require that evidence and information provided, and information derived therefrom, be kept confidential in accordance with stated conditions. Nevertheless, disclosure may be made where necessary as evidence in a public proceeding.

2. If deemed necessary, the Requesting State may request that the application for assistance, the contents of the request and its supporting documents, and the granting of such assistance be kept confidential.

3. The Requesting State shall not use evidence obtained, nor information derived therefrom, for purposes other than those stated in a request without the prior consent of the Requested State.

4

ARTICLE 9

*Return of Documents, Records, and Articles of Evidence*

The Requesting State shall return upon request any documents, records, or articles of evidence furnished in execution of a request as soon as possible.

ARTICLE 10

*Locating Persons*

The Requested State, consistent with the provisions of this Treaty, shall make thorough efforts to ascertain the location of persons specified in the request and believed to be in the Requested State.

ARTICLE 11

*Serving Documents*

1. The Requested State shall cause service of any document transmitted for that purpose by the Requesting State.
2. A request for service of a document requiring the appearance of a person before an authority in the Requesting State shall be transmitted a reasonable time before the scheduled appearance.
3. A document requiring such an appearance shall be served thirty days prior to the scheduled appearance or as otherwise agreed.
4. The Requested State shall return a proof of service executed according to its laws.

ARTICLE 12

*Providing Documents and Records of Government Offices or Agencies*

1. The Requested State shall provide a copy of a publicly available document or record of a government office or agency.
2. The Requested State may provide any document or record in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities. The Requested State in its discretion may deny the request entirely or in part.
3. Any document or record provided pursuant to this Article in accordance with procedures specified in the request and certified authentic by the Central Authority of the Requested State shall require no further certification or authentication to be admissible into evidence in the Requesting State.

ARTICLE 13

*Producing Other Documents and Records*

1. The Requested State, if necessary, shall compel a person to produce a document, record or article to the same extent as would

5

be required for criminal investigations or proceedings in that State. When search and seizure is required, the request shall contain such information as would justify such action in criminal investigations or proceedings under the laws of the Requested State.

2. With respect to paragraph 1 of this Article, every official of the Requested State who has custody of a seized document, record or article shall certify to the Central Authority of that State the identity of the thing seized, the continuity of the custody thereof, and the integrity of its condition. The Central Authority of the Requested State shall certify that the procedures specified in the request have been followed to the extent possible pursuant to the laws and practices of that State. A document, record or article so certified shall require no further foundation to be admissible into evidence in the Requesting State.

### ARTICLE 14

### *Taking Testimony in the Requested State*

1. A person from whom evidence is sought shall, if necessary, be compelled to appear and testify to the same extent as would be required in criminal investigations or proceedings in the Requested State.

2. Upon request, the Requested State shall specify the date and place of the taking of testimony.

3. The Requested State shall permit the presence of an accused, counsel for the accused, and persons charged with the enforcement of the criminal laws to which the request relates.

4. The executing authority shall provide persons permitted to be present the opportunity to question the person whose testimony is sought in accordance with the laws of the Requested State.

5. The executing authority shall provide persons permitted to be present the opportunity to propose additional questions and other investigative measures.

6. Testimonial privileges under the laws of the Requesting State shall not apply in the execution of a request, but such questions of privilege shall be preserved for the Requesting State.

### ARTICLE 15

### *Taking Testimony in the Requesting State*

1. The Requested State, upon request that a person in that State appear and testify in connection with a criminal investigation or proceeding in the Requesting State, shall compel that person to appear and testify in the Requesting State by means of the procedures for compelling the appearance and testimony of witnesses in the Requested State if:

　　a. the Requested State has no reasonable basis to deny the request;

　　b. the person could be compelled to appear and testify in similar circumstances in the Requested State; and

　　c. the Central Authority of the Requesting State certifies that the person's testimony is relevant and material.

6

2. A person who fails to appear as directed shall be subject to sanctions under the laws of the Requested State as if that person had failed to appear in similar circumstances in that State. Such sanctions shall not include removal of the person to the Requesting State.

## ARTICLE 16

### Transferring Persons in Custody for Testimonial Purposes

1. A person in custody needed as a witness in the Requesting State for criminal investigations or proceedings shall be transported to that State pursuant to conditions proposed by Article 15(1).

2. A defendant in custody in one State who seeks for purposes of confrontation to be present at a judicial proceeding in the other State shall be transported to that State unless the State in which the defendant is in custody has a reasonable basis to deny the request.

3. For purposes of this Article:

a. the receiving State shall have the authority and obligation to keep in custody a person transferred unless otherwise authorized by the sending State;

b. the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed;

c. the receiving State shall not decline to return a person transferred on the basis of nationality nor require the sending State to initiate extradition proceedings; and

d. the person transferred shall receive credit for service of the sentence imposed in the sending State while in the custody of the receiving State.

## ARTICLE 17

### Safe Conduct

1. A person appearing before an authority in the Requesting State pursuant to a request:

a. shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction which preceded departure; and

b. shall not be subject to prosecution based on testimony provided pursuant to the request to the extent that such testimony is required to honor the request and is true.

2. Safe conduct provided in this Article shall cease if, ten days after the person appearing has been notified that his or her presence is no longer required, that person, being free to leave, has not left the Requesting State or, having left, has returned.

## ARTICLE 18

### Immobilization and Forfeiture of Assets

1. In emergency situations, the Requested State shall have authority to immobilize assets found in that State which are subject to forfeiture.

7

2. Following such judicial proceedings as would be required under the laws of the Requested State, that State shall have the authority to order the forfeiture to the Requesting State of assets immobilized pursuant to paragraph 1 of this Article.

ARTICLE 19

*Other Treaties and Domestic Laws*

1. Assistance and procedures provided by this Treaty shall not prevent or restrict any assistance or procedure available under other international conventions or arrangements or under the laws of the Contracting Parties.

2. The activities of the International Criminal Police Organization (INTERPOL) are not affected by this Treaty.

ARTICLE 20

*Ratification and Entry into Force*

1. This Treaty shall be subject to ratification and the instruments of ratification shall be exchanged, as soon as possible, in Washington.

2. This Treaty shall enter into force upon the exchange of instruments of ratification.

ARTICLE 21

*Denunciation*

Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

IN WITNESS WHEREOF the undersigned, being duly authorized by their respective Governments, have signed this Treaty and have affixed hereunto their seals.

Done in Rome in duplicate, in the English and Italian languages, both equally authentic, this 9th day of November 1982.

For the
United States of America

For the
Italian Republic

**Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters signed 9 November 1982**

1.   As contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Mutual Legal Assistance Agreement"), the Governments of the United States of America and the Italian Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Mutual Legal Assistance Agreement is applied in relation to the bilateral Treaty between the United States of America and the Italian Republic on Mutual Assistance in Criminal Matters signed 9 November 1982 (hereafter "the 1982 Mutual Assistance Treaty") under the following terms:

a)   Article 4 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 18 bis of the Annex to this Instrument shall govern the identification of financial accounts and transactions, in addition to any authority already provided under the 1982 Mutual Assistance Treaty;

b)   Article 5 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 18 ter of the Annex to this Instrument shall govern the formation and activities of joint investigative teams, in addition to any authority already provided under the 1982 Mutual Assistance Treaty;

c)   Article 6 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Articles 7 and 18 quater of the Annex to this Instrument shall govern the taking of testimony of a person located in the Requested State by use of video transmission technology between the Requesting and Requested States, in addition to any authority already provided under the 1982 Mutual Assistance Treaty;

d)   Article 7 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 2(3) of the Annex to this Instrument shall govern the use of expedited means of communication, in addition to any authority already provided under the 1982 Mutual Assistance Treaty;

1

e)   Article 8 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 1 (1 bis) of the Annex to this Instrument shall govern the providing of mutual assistance to the administrative authorities concerned, in addition to any authority already provided under the 1982 Mutual Assistance Treaty;

f)   Article 9 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 8(3)-(5) of the Annex to this Instrument shall govern the limitation on use of information or evidence provided to the Requesting State, and the conditioning or refusal of assistance on data protection grounds.

2.   The Annex reflects the integrated text of the provisions of the 1982 Mutual Assistance Treaty and the U.S.-EU Mutual Legal Assistance Agreement that shall apply upon entry into force of this Instrument.

3.   In accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.   This Instrument shall not apply to requests made prior to its entry into force; except that, in accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, Articles 2(3), 7(e) and 18 quater of the Annex shall be applicable to requests made prior to such entry into force.

5.   Article 18 of the Annex shall be applied in lieu of Article 18 of the 1982 Mutual Assistance Treaty, and the related exchange of diplomatic notes between the United States and Italy of 13 November 1985.

6. a)   This Instrument shall be subject to the completion by the United States of America and the Italian Republic of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Italian Republic shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Mutual Legal Assistance Agreement.

b)   In the event of termination of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall be terminated and the 1982 Mutual Assistance Treaty shall be applied. The Governments of the United States of America and the Italian Republic nevertheless may agree to continue to apply some or all of the provisions of this Instrument.

2

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Rome, in duplicate, this third day of May 2006, in the English and Italian languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE          FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:          ITALIAN REPUBLIC:

3

ANNEX

## TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE ITALIAN REPUBLIC ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

ARTICLE 1
Obligation to Render Assistance

1.  The Contracting Parties undertake to afford each other, upon request and in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings.

.1 bis. a.  Mutual assistance shall also be afforded to a national administrative authority, investigating conduct with a view to a criminal prosecution of the conduct, or referral of the conduct to criminal investigation or prosecution authorities, pursuant to its specific administrative or regulatory authority to undertake such investigation. Mutual assistance may also be afforded to other administrative authorities under such circumstances. Assistance shall not be available for matters in which the administrative authority anticipates that no prosecution or referral, as applicable, will take place.

b.  Requests for assistance under this paragraph shall be transmitted between the Central Authorities designated pursuant to Article 2 of this Treaty, or between such other authorities as the Central Authorities agree instead to designate as an alternate channel for transmission.

2.  Such assistance shall include:

a. locating persons;

b. serving documents;

c. producing documents and records;

d. executing requests for search and seizure;

e. taking testimony;

f. transferring persons for testimonial purposes; and

g. immobilizing and forfeiting assets.

4

Other types of assistance shall also be granted to the extent such assistance is not inconsistent with the laws of the Requested State.

3. Assistance shall be rendered even when the acts under investigation are not offenses in the Requested State and without regard to whether the Requested State would have jurisdiction in similar circumstances.

4. This Treaty is intended solely for mutual assistance in criminal matters between authorities of the Contracting Parties.

## ARTICLE 2
### Central Authority

1. A request under this Treaty shall be made by a Central Authority for each Contracting Party. The Central Authorities shall communicate directly with each other to implement the provisions of this Treaty.

2. For the United States the Central Authority shall be the Attorney General. For the Italian Republic the Central Authority shall be the Minister of Justice.

3. Requests for mutual assistance made by authorities under this Treaty, and communications related thereto, may be made by expedited means of communications, including fax or e-mail, with formal confirmation to follow where required by the Requested State. The Requested State may respond to the request by any such expedited means of communication.

## ARTICLE 3
### Contents of a Request

1. A request for assistance shall indicate:

    a. the name of the authority conducting the investigation or proceeding to which the request relates;

    b. the subject matter and nature of the investigation or proceeding;

    c. a description of the evidence or information sought or the acts to be performed; and

    d. the purpose for which the evidence, information or action is sought.

5

2.  To the extent necessary and possible, a request shall include:

    a.  available information on the identity and whereabouts of a person to be located;

    b.  the identity and location of a person to be served, that person's relationship to the proceeding, and the manner in which service is to be made;

    c.  the identity and location of a person from whom evidence is sought;

    d.  a precise description of the place to be searched and the objects to be seized;

    e.  a description of the manner in which any testimony is to be taken and recorded;

    f.  a list of questions to be answered; and

    g.  a description of any particular procedure to be followed in executing the request.

3.  A request shall indicate the allowances and expenses to which a person appearing in the Requesting State will be entitled.

4.  A request and accompanying documents shall be in both English and Italian.

## ARTICLE 4
### Execution of a Request

1.  The Central Authority of the Requested State shall promptly comply with a request or, when appropriate, transmit it to the authority having jurisdiction to do so. The competent officials of the Requested State shall do everything in their power to execute a request. The courts of the Requested State shall issue subpoenas, search warrants, or any other process necessary in the execution of a request.

2.  A request shall be executed in conformity with the provisions of this Treaty and according to the laws of the Requested State. Procedures specified in the request shall be followed unless prohibited by the laws of the Requested State.

6

ARTICLE 5
Limitations on Compliance

1. The Requested State may deny assistance to the extent that:

a. execution of a request would prejudice the security or other essential public interests of the Requested State;

b. a request relates to a purely military offense or a matter considered a political offense by the Requested State; or

c. a request does not comply with the provisions of this Treaty.

2. Before refusing to execute a request, the Requested State shall determine whether assistance can be given subject to such conditions as it deems necessary.

3. The Requested State may postpone execution of a request or grant it subject to conditions if execution would interfere with an ongoing investigation or proceeding in the Requested State.

4. The Requested State shall immediately inform the Requesting State of the reason for partial or total denial or postponement of assistance.

ARTICLE 6
Return of a Completed Request

1. Upon completion of a request the Requested State shall, unless otherwise agreed, return to the Requesting State the original request together with all information and evidence obtained, indicating place and time of execution.

2. To the extent possible, all documents and records to be furnished pursuant to a request shall be complete and in unedited form. Upon application of the Requesting State, the Requested State shall make every effort to furnish original documents and records.

7

ARTICLE 7
Costs and Translations

The Requested State shall render assistance without cost to the Requesting State except for:

a. expenses incurred in the translation of documents accompanying a request or which result from a request;

b. fees of private experts specified in a request;

c. all expenses related to travel of witnesses pursuant to Article 15;

d. all expenses related to the transfer of witnesses in custody pursuant to Article 16; and

e. the costs associated with establishing and servicing a video transmission pursuant to Article 18 quater, unless otherwise agreed by the Requesting and Requested States; other costs arising in the course of providing assistance (including costs associated with travel of participants in the Requested State) shall be borne in accordance with the other provisions of this Article.


ARTICLE 8
Protecting Confidentiality and Restricting Use of Evidence
and Information

1. When necessary, the Requested State may require that evidence and information provided, and information derived therefrom, be kept confidential in accordance with stated conditions. Nevertheless, disclosure may be made where necessary as evidence in a public proceeding.

2. If deemed necessary, the Requesting State may request that the application for assistance, the contents of the request and its supporting documents, and the granting of such assistance be kept confidential.

3. The Requesting State may use any evidence or information obtained from the Requested State:

a. for the purpose of its criminal investigations and proceedings;

b. for preventing an immediate and serious threat to its public security;

8

c. in its non-criminal judicial or administrative proceedings directly related to investigations or proceedings:

      i.  set forth in subparagraph (a); or

      ii.  for which mutual assistance was rendered under Article 1(1 bis) of this Treaty;

d. for any other purpose, if the information or evidence has been made public within the framework of proceedings for which they were transmitted, or in any of the situations described in subparagraphs (a), (b) and (c); and

e. for any other purpose, only with the prior consent of the Requested State.

4.     a. This Article shall not prejudice the ability of the Requested State in accordance with this Treaty to impose additional conditions in a particular case where the particular request for assistance could not be complied with in the absence of such conditions. Where additional conditions have been imposed in accordance with this subparagraph, the Requested State may require the Requesting State to give information on the use made of the evidence or information.

b. Generic restrictions with respect to the legal standards of the Requesting State for processing personal data may not be imposed by the Requested State as a condition under subparagraph (a) to providing evidence or information.

5. Where, following disclosure to the Requesting State, the Requested State becomes aware of circumstances that may cause it to seek an additional condition in a particular case, the Requested State may consult with the Requesting State to determine the extent to which the evidence and information can be protected.


ARTICLE 9
Return of Documents, Records, and Articles of Evidence

The Requesting State shall return upon request any documents, records, or articles of evidence furnished in execution of a request as soon as possible.

9

ARTICLE 10
Locating Persons

The Requested State, consistent with the provisions of this Treaty, shall make thorough efforts to ascertain the location of persons specified in the request and believed to be in the Requested State.


ARTICLE 11
Serving Documents

1. The Requested State shall cause service of any document transmitted for that purpose by the Requesting State.

2. A request for service of a document requiring the appearance of a person before an authority in the Requesting State shall be transmitted a reasonable time before the scheduled appearance.

3. A document requiring such an appearance shall be served thirty days prior to the scheduled appearance or as otherwise agreed.

4. The Requested State shall return a proof of service executed according to its laws.


ARTICLE 12
Providing Documents and Records of Government Offices or Agencies

1. The Requested State shall provide a copy of a publicly available document or record of a government office or agency.

2. The Requested State may provide any document or record in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities. The Requested State in its discretion may deny the request entirely or in part.

3. Any document or record provided pursuant to this Article in accordance with procedures specified in the request and certified authentic by the Central Authority of the Requested State shall require no further certification or authentication to be admissible into evidence in the Requesting State.

10

ARTICLE 13
Producing Other Documents and Records

1. The Requested State, if necessary, shall compel a person to produce a document, record or article to the same extent as would be required for criminal investigations or proceedings in that State. When search and seizure i s r equired, t he r equest s hall c ontain s uch i nformation a s would justify such action in criminal investigations or proceedings under the laws of the Requested State.

2. With respect to paragraph 1 of this Article, every official of the Requested State who has custody of a seized document, record or article shall certify to the Central Authority of that State the identity of the thing seized, the continuity of the custody thereof, and the integrity of its condition. The Central Authority of the Requested State shall certify that the procedures specified in the request have been followed to the extent possible pursuant to the laws and practices of that State. A document, record or article so certified shall require no further foundation to be admissible into evidence in the Requesting State.

ARTICLE 14
Taking Testimony in the Requested State

1. A person from whom evidence is sought shall, if necessary, be compelled to appear and testify to the same extent as would be required in criminal investigations or proceedings in the Requested State.

2. Upon request, the Requested State shall specify the date and place of the taking of testimony.

3. The Requested State shall permit the presence of an accused, counsel for the accused, and persons charged with the enforcement of the criminal laws to which the request relates.

4. The executing authority shall provide persons permitted to be present the opportunity to question the person whose testimony is sought in accordance with the laws of the Requested State.

5. The executing authority shall provide persons permitted to be present the opportunity to propose additional questions and other investigative measures.

11

6.  Testimonial privileges under the laws of the Requesting State shall not apply in the execution of a request, but such questions of privilege shall be preserved for the Requesting State.


ARTICLE 15
Taking Testimony in the Requesting State

1.  The Requested State, upon request that a person in that State appear and testify in connection with a criminal investigation or proceeding in the Requesting State, shall compel that person to appear and testify in the Requesting State by means of the procedures for compelling the appearance and testimony of witnesses in the Requested State if:

   a.  the Requested State has no reasonable basis to deny the request;

   b.  the person could be compelled to appear and testify in similar circumstances in the Requested State; and

   c.  the Central Authority of the Requesting State certifies that the person's testimony is relevant and material.

2.  A person who fails to appear as directed shall be subject to sanctions under the laws of the Requested State as if that person had failed to appear in similar circumstances in that State. Such sanctions shall not include removal of the person to the Requesting State.


ARTICLE 16
Transferring Persons in Custody for Testimonial Purposes

1.  A person in custody needed as a witness in the Requesting State for criminal investigations or proceedings shall be transported to that State pursuant to conditions proposed by Article 15(1).

2.  A defendant in custody in one State who seeks for purposes of confrontation to be present at a judicial proceeding in the other State shall be transported to that State unless the State in which the defendant is in custody has a reasonable basis to deny the request.

12

3.  For purposes of this Article:

     a. the receiving State shall have the authority and obligation to keep in custody a person transferred unless otherwise authorized by the sending State;

     b. the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed;

     c. the receiving State shall not decline to return a person transferred on the basis of nationality nor require the sending State to initiate extradition proceedings; and

     d. the person transferred shall receive credit for service of the sentence imposed in the sending State while in the custody of the receiving State.


### ARTICLE 17
### Safe Conduct

1. A person appearing before an authority in the Requesting State pursuant to a request:

     a.  shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction which preceded departure; and

     b. shall not be subject to prosecution based on testimony provided pursuant to the request to the extent that such testimony is required to honor the request and is true.

2.  Safe conduct provided in this Article shall cease if, ten days after the person appearing has been notified that his or her presence is no longer required, that person, being free to leave, has not left the Requesting State or, having left, has returned.

13

ARTICLE 18
Seizure, Immobilization and Forfeiture of Assets

1. The Contracting Parties shall assist each other to the extent permitted by their respective laws in the seizure, immobilization and forfeiture of the fruits and instrumentalities of offenses.

2. Proceeds or property forfeited to a Contracting Party pursuant to this Article shall be disposed of by that Party according to its domestic law and administrative procedures. Either State may transfer all or part of such proceeds or property, or the proceeds of its sale, to the other State, to the extent permitted by their respective laws, upon such terms as they may agree.


ARTICLE 18 bis
Identification of bank information

1.      a. Upon request of the Requesting State, the Requested State shall, in accordance with the terms of this Article, promptly ascertain if the banks located in its territory possess information on whether an identified natural or legal person suspected of or charged with a criminal offense is the holder of a bank account or accounts. The Requested State shall promptly communicate the results of its enquiries to the Requesting State.

        b. The actions described in subparagraph (a) may also be taken for the purpose of identifying:

                i.   information regarding natural or legal persons convicted of or otherwise involved in a criminal offense;

                ii.  information in the possession of non-bank financial institutions; or

                iii. financial transactions unrelated to accounts.

2. In addition to the requirements of Article 3(1) of this Treaty, a request for information described in paragraph 1 shall include:

        a. the identity of the natural or legal person relevant to locating such accounts or transactions;

14

      b. sufficient information to enable the competent authority of the Requested State to:

> i.  reasonably suspect that the natural or legal person concerned has engaged in a criminal offense and that banks or non-bank financial institutions in the territory of the Requested State may have the information requested; and
>
> ii.  conclude that the information sought relates to the criminal investigation or proceeding; and

      c. to the extent possible, information concerning which bank or non-bank financial institution may be involved, and other information the availability of which may aid in reducing the breadth of the enquiry.

3. Unless subsequently modified by exchange of diplomatic notes between the European Union and the United States, requests for assistance under this Article shall be transmitted between:

      a. the Minister of Justice of Italy, and

      b. for the United States, in lieu of the channel described in Article 2(1) of this Treaty, the attaché responsible for Italy of the:

> i.  U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;
>
> ii.  U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;
>
> iii.  U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

15

4. The Contracting Parties shall provide assistance under this Article with respect to terrorist activity punishable under the laws of both the Requesting and Requested States. The Contracting Parties also shall provide assistance under this Article with respect to money laundering activity punishable under the laws of both the Requesting and Requested States, including where the activity is punishable as money laundering under United States law while punishable as a predicate offense to the money laundering under Italian law. The Contracting Parties also shall provide assistance with respect to such other criminal activity as they may notify each other.

5. The Requested State shall respond to a request for production of the records concerning the accounts or transactions identified pursuant to this Article in accordance with the other provisions of this Treaty.

## ARTICLE 18 ter
### Joint investigative teams

1. Joint investigative teams may be established and operated in the respective territories of the United States and the Italian Republic for the purpose of facilitating criminal investigations or prosecutions involving the United States and one or more Member States of the European Union where deemed appropriate by the United States and the Italian Republic.

2. The procedures under which the team is to operate, such as its composition, duration, location, organization, functions, purpose, and terms of participation of team members of a State in investigative activities taking place in another State's territory shall be as agreed between the competent authorities responsible for the investigation or prosecution of criminal offenses, as determined by the respective States concerned.

3. The competent authorities determined by the respective States concerned shall communicate directly for the purposes of the establishment and operation of such team except that where the exceptional complexity, broad scope, or other circumstances involved are deemed to require more central coordination as to some or all aspects, the States may agree upon other appropriate channels of communications to that end.

16

4. Where the joint investigative team needs investigative measures to be taken in one of the States setting up the team, a member of the team of that State may request its own competent authorities to take those measures without the other States having to submit a request for mutual assistance. The required legal standard for obtaining the measure in that State shall be the standard applicable to its domestic investigative activities.


## ARTICLE 18 quater
### Video conferencing

1. The use of video transmission technology shall be available between the United States and the Italian Republic for taking testimony in a proceeding for which mutual assistance is available of a witness or expert located in the Requested State. To the extent not specifically set forth in this Article, the modalities governing such procedure shall be as otherwise provided under this Treaty.

2. The Requesting and Requested States may consult in order to facilitate resolution of legal, technical or logistical issues that may arise in the execution of the request.

3. Without prejudice to any jurisdiction under the law of the Requesting State, making an intentionally false statement or other misconduct of the witness or expert during the course of the video conference shall be punishable in the Requested State in the same manner as if it had been committed in the course of its domestic proceedings.

4. This Article is without prejudice to the use of other means for obtaining of testimony in the Requested State available under applicable treaty or law.

5. The Requested State may permit the use of video conferencing technology for purposes other than those described in paragraph 1 of this Article, including for purposes of identification of persons or objects, or taking of investigative statements.

17

ARTICLE 19
Other Treaties and Domestic Laws

1.  Assistance and procedures provided by this Treaty shall not prevent or restrict any assistance or procedure available under other international conventions or arrangements or under the laws of the Contracting Parties.

2. The activities of the International Criminal Police Organization (INTERPOL) are not affected by this Treaty.


ARTICLE 20
Denunciation

Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

18